UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

BRIGHTPOINT NORTH AMERICA L.P.,

Plaintiff,

v.

RAMON ACOSTA, et al.,

Defendants.

Civil No. 09-1500 (JAF)

**OPINION AND ORDER**

Plaintiff, Brightpoint North America L.P., brings the present diversity action to enforce an Indiana state-court judgment against Defendants, Ramón Acosta, Velia Fernández, and the conjugal partnership between them. (Docket No. 4.) Plaintiff moves for summary judgment. (Docket No. 17.) Defendants oppose and counter with a cross-motion for summary judgment. (Docket No. 27.) Plaintiff opposes. (Docket No. 28.)

**I.**

**Factual and Procedural Synopsis**

We derive the following factual summary from Plaintiff's statement of uncontested material facts. (Docket No. 18.) According to Local Civil Rule 56(e), "[f]acts contained in a supporting or opposing statement of material facts . . . shall be deemed admitted unless properly controverted." L.Cv.R. 56(e). Because Defendants have failed to submit a statement of material facts as contemplated by the Local Rules, we take Plaintiff's facts as true. See Cosme-Rosado v. Serrano-Rodríguez, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently

upheld the enforcement of [the District Court of Puerto Rico's local rule], noting repeatedly that 'parties ignore [it] at their peril' and that 'failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.'" (quoting Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2001))).

Plaintiff is a Delaware limited partnership with its principal place of business in Indianapolis, Indiana. Acosta is a citizen of Puerto Rico and the president of CAT Communications, Inc. ("CAT"), a Puerto Rico corporation with its principal place of business in San Juan, Puerto Rico. CAT entered into a contract with Plaintiff, and Acosta guaranteed the payment of all liabilities of CAT to Plaintiff. The contract between Plaintiff and Acosta included a "Governing Law and Forum" clause. (Docket No. 18-4.) Should there be a lawsuit concerning the payment of the guaranty, the parties consented to the application of the laws of Indiana and the jurisdiction of the superior court of Marion County, Indiana. Id. at 10. In accordance with the forum-selection clause, Plaintiff filed a complaint in Marion Superior Court and served Defendants with a summons and complaint via certified mail. Defendants received service of process on November 3, 2008. (Docket No. 18-4.) On December 4, 2008, Plaintiff obtained entry of a partial summary judgment in the Marion Superior Court ("Indiana Judgment") against Acosta for $115,047.27. (Docket No. 1-2.) This was comprised of the principal amount of $102,087.87; pre-judgment interest on said amount at the rate of 1.5% per month for a total of $10,554.36; and Plaintiff's reasonable attorneys' fees in the sum of $2,405. Acosta owns undivided interests in property located in the Commonwealth of Puerto Rico,

which includes real property jointly owned with Fernández outside of a conjugal partnership. Acosta and Fernández entered into a prenuptial agreement that stipulated against the creation of a conjugal partnership and for the individual ownership of all property during the marriage. (Docket No. 21.) Acosta has not paid any part of the Indiana Judgment.

Plaintiff filed an amended complaint in this court against Acosta, Fernández, and their conjugal partnership on June 18, 2009, seeking the enforcement of the Indiana Judgment. (Docket No. 4.) On September 21, 2009, Plaintiff moved for summary judgment (Docket No. 17) and filed a statement of uncontested facts (Docket No. 18). On October 20, 2009, Defendants filed a memorandum in opposition to Plaintiff's summary-judgment motion, as well as a cross-motion for summary judgment. (Docket No. 27.) Plaintiff submitted a motion in opposition to Defendants' summary-judgment motion on November 9, 2009. (Docket No. 28.)

## II.

### Standard for Summary Judgment

We grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The movant carries the burden of establishing that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In evaluating a motion for

summary judgment, we view the record in the light most favorable to the non-movant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). "Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (internal quotation marks omitted). The non-movant "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### III.

### Analysis

Defendants argue that we cannot enforce the Indiana Judgment because Puerto Rico courts, applying the laws of the Commonwealth, would not enforce the judgment. They argue that the Indiana Judgment would not be recognized under Puerto Rico law because the Indiana court: (1) lacked personal and subject-matter jurisdiction; (2) lacked competence to hear the matter; (3) issued the judgment without observing due process of law; (4) was known for its bias against foreigners; and (5) honored a forum-selection clause that would contravene Puerto Rico's public policy. (Docket No. 27.) We begin our analysis by reviewing our jurisdiction and the proper procedure for enforcing state-court judgments in federal court. Then, we proceed to treat each of Defendants' arguments in turn.

Congress' grant of diversity jurisdiction to federal district courts provides "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332 (emphasis added). We, therefore, have subject-matter jurisdiction

over claims to enforce state-court judgments if those claims meet the § 1332 requirements of diversity and amount in controversy. Plaintiff is a citizen of Indiana and Defendants are citizens of Puerto Rico, while the judgment to be enforced exceeds $115,000.

Congress has mandated that federal courts grant full faith and credit to the judgments of all states, territories, and possessions of the United States, including Puerto Rico. See 28 U.S.C. § 1738. Federal courts sitting in diversity apply the Federal Rules of Civil Procedure unless the rule in question is shown to violate the Rules Enabling Act or the U.S. Constitution. Johnson Chem. Co. v. Condado Ctr., Inc., 453 F.2d 1044, 1046 (1st Cir. 1972) (citing Hanna v. Plumer, 380 U.S. 460, 469-74 (1965)). Rule 69(a) states that a federal court must execute a money judgment in accordance with the procedure of the state in which the court sits. Fed. R. Civ. P. 69(a). While the mandate of full faith and credit in § 1738 requires states and territories to recognize each other's valid judgments, it does not require them to apply the same mechanisms to enforce those judgments. See Baker v. Gen. Motors Corp., 522 U.S. 222, 235 (1998) ("Enforcement measures do not travel with the sister state judgment . . . [and] such measures remain subject to the evenhanded control of forum law.")

Because foreign judgments do not automatically operate in Puerto Rico, exequatur proceedings are required for such judgments to be officially recognized. Ex parte Márquez Estrella, 128 P.R. Dec. 243 (1991) (defining exequatur as a proceeding for the recognition and enforcement of foreign judgments by the courts of the forum where enforcement is sought); see infra App. A (certified translation of Ex parte Márquez). In a recent opinion, the Puerto Rico Supreme Court distinguished foreign judgments rendered by states of the U.S. from those

Civil No. 09-1500 (JAF) -6-

rendered by foreign nations. Avilés v. P.R. Tel. Co., 09 TSPR 163, ¶¶ 12-13; see infra App. B (certified translation of the pertinent section of Avilés). When enforcing a judgment from a U.S. state, Puerto Rico courts utilize a simplified form of the exequatur procedure that looks only to whether the state court: (1) had personal and subject-matter jurisdiction to hear the case; (2) observed due process of law; and (3) did not issue its judgment on a fraudulent basis. Avilés infra App. B.

The crux of Defendants' argument is that the forum-selection clause contained in the contract between Plaintiff and Defendants was invalid and, therefore, that the Indiana court was not competent to hear the original case. (Docket No. 27 at 6-8.) Competence, however, is properly considered only in an exequatur analysis of judgments from foreign nations.[1] See Avilés, infra App. B. There is no separate competence inquiry for the recognition of U.S. state-court judgments. Avilés, infra App. B. Since the case at bar concerns the recognition of a judgment from Indiana's state court, we will construe Defendants' argument for the invalidity of the forum-selection clause as pertaining solely to the personal and subject-matter jurisdiction prongs of exequatur.

---

[1] In an exequatur analysis, "competence" refers to the power of a court to hear a case. See Efectos Litográficos v. Nat'l Paper & Type Co., 12 P.R. Offic. Trans. 486, 501 (1982) (citing Restatement (Second) of Conflict of Laws § 105 (1980)); see also Black's Law Dictionary 406 (9th ed. 2009) (defining a competent court as "[one] that has the power and authority to do a particular act; one recognized by law as possessing the right to adjudicate a controversy"). Competence is distinct from exequatur's general inquiry into personal and subject-matter jurisdiction because it "shall be measured against the rules of the foreign nation." Efectos Litográficos, 12 P.R. Offic. Trans. at 501 (emphasis added). In other words, competence is a question of whether the rendering court's sovereign granted it the power to hear a case, not a question of whether jurisdiction existed by the standards of the nation where enforcement is sought. Thus, a competence inquiry would be inapposite when the judgment to be enforced was rendered by a court of the same nation.

Civil No. 09-1500 (JAF) -7-

Defendants also argue that the selection of the Indiana forum contravenes Puerto Rico's public policy as embodied by the Puerto Rico Dealers' Act, 10 L.P.R.A. § 278 (2004). (Docket No. 27 at 11.) But the Puerto Rico Supreme Court clearly held in Ex Parte Márquez that the public-order prong of the exequatur analysis does not apply to judgments from federal courts or state courts. Infra App. A, 9-10; accord Avilés, infra App. B. In addition, Defendants have made conclusory allegations that the Indiana forum could be prejudiced against foreigners. The Puerto Rico Supreme Court has held, however, that the "prejudice" prong of exequatur does not apply to state-court judgments.[2] Avilés, infra App. B.

We now proceed to address the remaining prongs of the exequatur analysis: Personal jurisdiction, subject-matter jurisdiction, due process, and fraud.

**A.   Personal Jurisdiction**

Defendants attempt to deny the Indiana court's personal jurisdiction over them by casting doubt on the validity of both the forum-selection clause and the service of process; they succeed in neither argument. We turn first to the forum-selection clause.[3] Indiana courts "may exercise

---

[2] To the extent a claim of prejudice could be construed as a separate challenge to due process, we reject the argument as a conclusory allegation unsupported by the factual record. Defendants have not submitted any evidence as to partiality or prejudice exercised by Indiana courts against citizens of other jurisdictions.

[3] While Defendants have argued against the validity of the Indiana forum, they have not directly addressed the Indiana court's use of Indiana law in interpreting the contract's forum-selection clause. Regardless, the point is moot; the contract between the parties contained a choice of law clause stipulating to the application of Indiana law. (Docket No. 18-4 at 10.) Furthermore, the Puerto Rico and Indiana standards for measuring the validity of forum-selection clauses are identical and, thus, would lead to the same result. Compare Dexter Axle Co. v. Baan USA, Inc., 833 N.E.2d 43, 48 (Ind. Ct. App. 2005) (adopting federal standard for forum-selection clause validity), and Unisys P.R., Inc. v. Ramallo Bros. Printing, Inc., 128 P.R. Dec. 842 (1991) (same).

Civil No. 09-1500 (JAF)                                                                                              -8-

jurisdiction on any basis not inconsistent with" the Indiana constitution or the U.S. Constitution. Ind. R. Trial P. 4.4(A) (2008). This language extends the personal jurisdiction of Indiana courts to the full extent of the Fourteenth Amendment's Due Process Clause. See LinkAmerica Corp. v. Albert, 857 N.E.2d 961, 967 (Ind. 2006). The Supreme Court has held that forum-selection clauses, where freely negotiated and neither unreasonable nor unjust, act as consent to personal jurisdiction and do not offend principles of due process. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n.14 (1985). A valid forum-selection clause establishes specific personal jurisdiction for claims arising out of the contract of which it is a part. Jallali v. Nat'l Bd. of Osteopathic Med. Exam'rs, Inc., 908 N.E.2d 1168, 1174 (Ind. Ct. App. 2009). A forum-selection clause is presumptively enforceable in the absence of fraud, overreaching, unreasonableness of forum selection, or violation of the forum's public policy. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972); Dexter Axle Co. v. Baan USA, Inc., 833 N.E.2d 43, 48 (Ind. Ct. App. 2005).

Under this standard, the forum-selection clause at issue in this case was enforceable. The contract between Acosta and Plaintiff included a provision under the heading "Governing Law and Forum" stating "that any and all disputes hereunder shall be decided exclusively by litigation in state or federal courts located within the Southern District of Indiana, Indianapolis Division, United States of America." (Docket No. 18-4 at 10.) Upon examining the record, there is nothing to bar the enforcement of the forum-selection clause. Defendants fail to establish that fraud or overreaching were factors in the negotiation of the contract. While Defendants argue that the forum-selection clause is unreasonable because it would entail

"litigating this case in a court 2,000 miles from Puerto Rico" (Docket No. 27), such inconvenience is insufficient to invalidate the clause. While litigating a case in Indiana might indeed be burdensome for Acosta, a resident of Puerto Rico, nothing in the record leads us to believe that the selection of the Indiana forum was arbitrary. After all, it is paramount to note that Plaintiff's principal place of business is in Indianapolis, Marion County, Indiana. For the aforementioned reasons, the forum-selection clause is valid; the parties freely and voluntarily consented to bring suit within the jurisdiction of Indiana.

Defendants also argue a lack of personal jurisdiction owing to deficient service of process; they contend that service of process by certified mail cannot establish jurisdiction under Puerto Rico law. (Id.) Exequatur proceedings, however, are not concerned with whether the original judgment was issued by a court that would have had personal jurisdiction consistent with the laws of Puerto Rico. See Roseberry v. Registrar, 14 P.R. Offic. Trans. 958, 964 (1983). Rather, the question is whether personal jurisdiction existed under Indiana law and within the confines of Fourteenth Amendment Due Process jurisprudence as announced by the U.S. Supreme Court. See generally Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n., 455 U.S. 691, 704-05 (1982) (discussing jurisdictional exceptions to the Full Faith and Credit Clause); Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945) (illustrating Due Process Clause restraints on personal jurisdiction).

We have seen no persuasive argument that the service of process leading to the Indiana Judgment exceeded the Constitutional limits of due process. The U.S. Supreme Court, in Mullane v. Central Hanover Bank & Trust Co., announced that service satisfies due process

Civil No. 09-1500 (JAF)                                                                                                          -10-

where it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950). Service by certified mail with return receipt to Acosta's known business address was reasonably calculated to provide him with notice of a pending suit. See id. at 319 (endorsing mailings as a form of service reasonably calculated to provide notice); accord Greene v. Lindsey, 456 U.S. 444, 455 (1982). Furthermore, although actual notice is unnecessary, Plaintiff produced evidence of a phone message from Acosta to Plaintiff's attorney, a month after service was received, referencing a desire "to discuss a case with Brightpoint" and an affidavit from the same attorney testifying that Acosta admitted he had received the complaint and summons. (Docket No. 18-4.) Acosta has never explicitly denied receipt of actual notice.

The method of service in the prior case also comported with Indiana law, even where service was by certified mail with a return receipt signed by an individual other than Acosta and without evidence that Acosta himself ever received the service or knew its contents. Indiana Rule of Trial Procedure 4.1 provides that service on an individual may be effected by registered or certified mail with return receipt. Under Indiana law, however, the party being summoned need not sign the certified mail receipt. See Robinson v. Turner, 886 F. Supp. 1451, 1456 (S.D. Ind. 1995). Service is effective as long as the signer had actual, apparent, or implied authority to receive certified mail for the party. Id. at 1457. Furthermore, Indiana law does not require that the party actually receive the summons in order for due process to be satisfied. Precision Erecting v. Wokurka, 638 N.E.2d 472, 474 (Ind. Ct. App. 1994) ("[A]ctual delivery to the party is not jurisdictionally necessary"). The record reflects that the Marion County Clerk sent, via

certified mail, a summons addressed to Acosta. (Docket No. 18.) Defendants do not argue that whoever signed for the summons was not authorized to do so. Thus, Acosta was properly served under Indiana law.

In light of the foregoing, we hold that the Marion Superior Court had personal jurisdiction over Acosta.

### B. Subject-Matter Jurisdiction

Our analysis now turns to the question of whether the Marion Superior Court had subject-matter jurisdiction over the case. Under Indiana law, the Marion Superior Court has "concurrent and coextensive jurisdiction with the Marion circuit court in all cases and upon all subject matters." Ind. Code § 33-33-49-9(1) (2009). "The [Marion] circuit court has original jurisdiction in all civil cases and in all criminal cases . . . ." Ind. Code § 33-28-1-2(a). Therefore, the Marion Superior Court had subject-matter jurisdiction over the original case.

### C. Due Process

Defendants argue that the Marion Superior Court did not observe due process of law in issuing its judgment. This argument, however, is based on deficient service of process, a claim we have already disposed of in our consideration of personal jurisdiction. We reiterate that service on Acosta by certified mail with return service met the requirements of due process.

### D. Fraud

No argument has been advanced by Defendants that the Indiana Judgment was obtained through fraudulent means. Defendants point to a "lack of negotiating that occurred between the

parties prior to the execution of the [contract]" from which the Indiana Judgment arose (Docket No. 27 at 8), but this alone is not evidence of fraud.

For the preceding reasons, we find that the Indiana Judgment meets the test for exequatur proceedings in Puerto Rico. We find that there is no genuine issue as to any material fact and the Plaintiff is entitled to summary judgment as a matter of law. However, because Defendant Fernández was not a party to the Indiana Judgment, we are unable to enforce that judgment against her.

Nor can we enforce the judgment against a conjugal partnership between Defendants. The Puerto Rico Civil Code dictates that a new legal entity separate from bride and groom, the conjugal partnership, is created upon marriage. 31 L.P.R.A. § 3622 (1993); Montes-Santiago v. State Ins. Fund Corp., 600 F. Supp. 2d 339, 343 (D.P.R. 2009). The conjugal partnership generally holds all property acquired by the spouses during marriage as community property, dividing interest in such property into equal shares upon dissolution of the marriage. See 31 L.P.R.A. §§ 3641, 3697. The Code also allows for prenuptial agreements that "stipulate the conditions for the conjugal partnership with regard to present and future property." 31 L.P.R.A. § 3551. Puerto Rico's Supreme Court has determined that parties are free to "totally eliminate the legal regime" of conjugal property through the use of prenuptial agreements. See Umpierre v. Torres Díaz, 14 P.R. Offic. Trans. 578, 592 (1983). Defendants' prenuptial agreement stipulates that they are not married under the "Community Property Partnership Regime provided in the Puerto Rico Civil Code" and that all property will be separately owned by

Civil No. 09-1500 (JAF) -13-

Defendants.  (Docket No. 21.)  We cannot enforce a judgment against an entity that does not exist.

## IV.

## Conclusion

For the reasons stated herein, we hereby **GRANT IN PART** Plaintiff's motion for summary judgment (Docket No. 17) with regard to Acosta.  We **DISMISS WITH PREJUDICE** the complaint against the conjugal partnership (Docket No. 4). We **DISMISS WITHOUT PREJUDICE** of independent litigation the claim against Fernández (id.) if any remedy is otherwise available.  We **DENY** Defendants' motion for summary judgment (Docket No. 27).  The Plaintiff may request from the Clerk of Court the issuance of a writ for execution of judgment, by attachment or otherwise, based on the final Indiana Judgment against Acosta's share in his jointly-owned properties or any other property solely belonging to Acosta.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 8th day of March, 2010.

s/José Antonio Fusté
JOSE ANTONIO FUSTE
Chief U.S. District Judge